(C.D. 2290)

W. J. BYRNES & CO. OF L. A., INC.
FORTUNE TRADING CO., INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 9, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Certain importations of cotton corduroy cushion covers were assessed with duty at the rate of 50 per centum ad valorem, pursuant to the provision in paragraph 909 of the Tariff Act of 1930, for articles made or cut from corduroy fabrics.

Plaintiffs herein contest said assessment, claiming that said articles are more specifically provided for in paragraph 911(b) of said act, as modified by the Japanese Protocol to the General Agreement on

Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by T.D. 53877, as pillowcases, wholly or in chief value of cotton, which are dutiable at the rate of 12½ per centum ad valorem.

An alternative claim for classification within the provisions of paragraph 923 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by T.D. 52476, for articles of pile construction, wholly or in chief value of cotton, not specially provided for, with the consequent assessment of duty at the rate of 20 per centum ad valorem, has been interposed, but not pressed. It is, therefore, deemed to have been abandoned.

The respective tariff provisions, insofar as here pertinent, read as follows:

Paragraph 909, *supra*:

Pile fabrics (including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton, and all articles, finished or unfinished, made or cut from such pile fabrics, all the foregoing, * * * if corduroys, * * *, 50 per centum ad valorem; * * *.

Paragraph 911(b), as modified, *supra*:

Sheets and pillowcases, wholly or in chief value of cotton_____ 12½% ad val.

A sample of the imported articles is in evidence as plaintiffs' exhibit 1. It is a zippered cover, stipulated to be in chief value of cotton corduroy, for items which might popularly be described as throw pillows, of which plaintiffs' exhibit 2 is an example.

The sole witness in the case was Ben Mitchell, president of plaintiff, Fortune Trading Co., Inc., the real importer of the instant merchandise. According to this witness, the articles at bar are imported in three shapes, round, square, and triangular, and in a variety of colors, white included. The square shapes are in 12-, 14-, and 18-inch sizes; the round shapes have 12- or 14-inch diameters; while the triangular shapes are all the same size, although the dimensions thereof were not stated.

It further appears from the testimony of the witness that the Fortune Trading Co., Inc., is a manufacturer, as well as an importer, of pillows and pillow coverings, which sells domestically to large department stores, specialty shops, sleep shops, gift shops, and art needle work departments, mainly in the western half of the country.

Mitchell defined the word "pillow" as a soft material, such as kapok, cotton, cotton linters, or polyurethane rubber, incased in a muslin covering. He gave as his understanding of the term "pillowcase," a material sewn to fit over a pillow as a temporary or removable covering, as distinguished from a "pillow sack," or primary ticking, which, in his opinion, is the permanent covering holding the soft material intact. To the knowledge of this witness, the only use of plaintiffs' exhibit 1 is as a covering or a case for a pillow which is

used as a head or back rest. He further stated that he would deliver items like plaintiffs' exhibit 1 to fill an order for pillowcases, although there are many different types of pillowcases, for the reason that they are articles which have been known as pillowcases since the early part of 1957.

Whether or not the instant merchandise constitutes a good delivery for pillowcases is not the issue here, however, for commercial designation is neither claimed nor established. What is to be determined is the common meaning of the tariff provision for pillowcases, in the light of the intent of Congress in employing that term.

Common meaning is a question of law to be decided by the court. *United States* v. *Florea & Co., Inc.*, 25 C.C.P.A. (Customs) 292, T.D. 49396; *United States* v. *O. Brager-Larsen*, 36 C.C.P.A. (Customs) 1, C.A.D. 388. As a guide to its ascertainment, and for the purpose of refreshing the court's recollections with respect to common meaning, it is appropriate to consider relevant lexicographical and other standard authorities. *United States* v. *John B. Stetson Co.*, 21 C.C.P.A. (Customs) 3, T.D. 46319. The court may also consider the testimony of witnesses having occasion to become familiar with the term in question, but such testimony is advisory only and without binding effect. *Stephen Rug Mills* v. *United States*, 32 C.C.P.A. (Customs) 110, C.A.D. 293; *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 24, C.A.D. 209.

Counsel for the plaintiffs suggests that the term "pillowcase" has been judicially defined in the case of *Freund Freund & Co.* v. *United States*, 72 Treas. Dec. 648, T.D. 49264, with such particularity as to establish that the articles at bar fall literally within its scope.

It is the position of the defendant, however, that any such broad construction of the word in question as would embrace the articles at bar would contravene the purpose of Congress in providing for those pillowcases only which are usually and normally used as bedding.

The merchandise involved in *Freund Freund & Co.* v. *United States*, *supra*, consisted of pillow ticking, a material so processed and formed as to be suitable and chiefly used for the encasing of feathers or other soft substance for the making of pillows. In concluding that pillow ticking was a part of the pillow *per se*, rather than a case for a pillow, and, hence, not included within the tariff provision for pillowcases, the court adverted to the following definitions:

*Pillow*, n. 1. A bag or case of cloth stuffed with some yielding material, as down, feathers, or hair, or something made of rubber inflated with air, used as a support when one is reclining or sleeping; especially such a rest for the head as used on a bed: generally covered with a removable case made of linen or cotton cloth.

*Pillowcase*, n. A covering, generally of linen or cotton cloth, drawn over a pillow, to be replaced when soiled. [New Standard Dictionary, 1930 edition.]

*Pillow,* n. 1. Anything used to support the head of a person when reposing; esp., a sack or case filled with feathers, down, hair, or other soft material.

*Pillowcase,* n. A removable covering for a pillow, usually of white linen or cotton cloth. [Webster's New International Dictionary, 1933.]

While, in the generic sense, the term "pillowcase" as so defined may properly serve to describe every removable outer covering for a pillow, we seriously question whether Congress wrote this word into the tariff act with so broad a construction in view. It must be remembered in the first instance that the provision for pillowcases does not stand alone in paragraph 911(b), either as originally enacted or as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, *supra.* In a single clause, with but one rate of duty applicable, Congress has provided for both sheets and pillowcases, wholly or in chief value of cotton. This is so commonplace an expression, and so ordinary a coupling of these two items as naturally to suggest those articles which normally constitute bedding; the one to cover and protect a mattress, the other to cover and protect a bed pillow. That this is in fact, the sense in which Congress employed these two words seems to flow from the following comment in the Summary of Tariff Information, 1929, prepared for the use of the Committee on Ways and Means of the House of Representatives in connection with its consideration of the bill which became the Tariff Act of 1930. It is there stated, at page 1578:

\* \* \* Bed sheets are ordinarily made of wide plain-woven cloth, and pillowcases of plain-woven cloth, some of it tubular, cut to appropriate lengths and hemmed. Sheets and pillowcases are usually made from bleached cloth but some are made from cloths piece-dyed in tints to harmonize with the color scheme of the bedchamber.

In the case of *Knauth, Nachod & Kuhne* v. *United States,* 31 Treas. Dec. 213, T.D. 36689, it was held that the provision for sheets in paragraph 264 of the Tariff Act of 1913 was not a general provision intended to cover all sheets composed of cotton, but rather a "denominative" term enacted to provide for a specific article, to wit, the article "used as bedding to separate the sleeper's body from other bedclothes."

We are of opinion that this is also the sense in which the provision for pillowcases was enacted and that Congress did not thereby intend to include every removable covering for a pillow, but only such as usually encase bed pillows.

It needs no extended discussion to reach the conclusion that the articles at bar are not pillowcases for bed pillows. In fabric, construction, color, and size, they differ markedly. As counsel for the defendant has so fittingly observed:

The imported article is described on most of the invoices as "cotton corduroy upholstery." This description most aptly covers the article and brings it under the classification made by the customs officials. The corduroy (or ribbed fabric) covers pillows used extensively on upholstered sofas, love seats and chairs, in colors to blend with the color scheme of a room and in various shapes to lend style to particular pieces of upholstered furniture. It is difficult to imagine one using a triangular shaped corduroy covered pillow to enjoy a night's slumber. It is likewise difficult to assume that corduroy pillowcases, in varied colors and shapes, are used in the same manner as cotton cloth pillowcases on a cotton cloth sheeted bed.

By reason of the foregoing, we consider the claim of plaintiffs for classification of the subject pillow covers within the tariff provision for "pillowcases" to be untenable. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.