VICTOR B. HANDAL & BRO., INC. *v.* UNITED STATES   (No. 5238)[*]

United States Court of Customs and Patent Appeals, December 8, 1966

*Siegel, Mandell & Davidson, Joshua M. Davidson* (*David Serko, Allan H. Kamnitz, of counsel*) for appellant.

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal, Howard J. Kashner* for the United States.

[Oral argument November 8, 1966 by Mr. Davidson and Mr. Kashner]

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Associate Judges, and Judge WILLIAM H. KIRKPATRICK[**]

KIRKPATRICK, Judge, delivered the opinion of the court:

▮ This appeal is from the judgment of the United States Customs

Court, Second Division, 55 Cust. Ct. 264 (C.D. 2588), overruling appellant's protest to the classification of certain corduroy articles described in the entry as corduroy pillowcases.

The collector classified the imports under paragraph 909, Tariff Act of 1930, and claim is made under paragraph 911(b). The pertinent portions of the statutes are:

Paragraph 909:

Pile fabrics (including pile ribbons), cut or uncut, whether or not the pile covers the entire surface, wholly or in chief value of cotton, and all articles, finished or unfinished, made or cut from such pile fabrics, all the foregoing, * * * if corduroys, plushes, or chenilles, 50 per centum ad valorem; * * *.

Paragraph 911(b), as modified by T.D. 53865:

Sheets and pillowcases, wholly or in chief value of cotton_____ 12½% ad val.

Although appellant claimed alternatively for classification under 923 before the Customs Court, that claim was dismissed by the court below and not pressed here. The sole issue for our consideration, therefore, is whether the imported corduroy articles are "pillowcases" within the meaning of paragraph 911(b) of the 1930 Act.

The imports consist of corduroy coverings for bed pillows, in the form of a bag having 3 of its edges stitched together and the remaining edge equipped with a zipper. When imported, these corduroy articles were wrapped in plastic bags bearing the following descriptive matter:

SLEEPY TIME
ZIPPERED PILLOW COVER
OF
WASHABLE CORDUROY
ANY BED PILLOW
QUICKLY BECOMES
A LOUNGING PILLOW
Enjoy full size bed pillow
comfort—Practical
—Decorative
—Economical
This pillow cover is made in Japan and superbly
tailored for long wear 100% cotton

The plastic wrappers also show drawings illustrating various uses of pillows enclosed in the corduroy covers; e.g., a person resting on a pillow on the floor, a man using a pillow behind his back in a sitting position and a woman in a lounge chair, with a pillow at her back, reading a book.

The testimony of witnesses for both the appellant and the Government clearly shows that the purpose of the imported articles is to convert a bed pillow into a lounge pillow so that it can be taken out of the bedroom and used throughout the house, especially in connection with television viewing and napping. However, a bed pillow so covered would not ordinarily be used for sleeping at night because the ribbing

of a fabric such as corduroy is not too comfortable for sleeping. To use the same pillow for sleeping, the corduroy cover is usually taken off the pillow and replaced by a "regular bed pillow cover" made of smoother fabric.

The Customs Court, in holding the merchandise at bar to be not a "pillowcase" within the meaning of paragraph 911(b), quoted the following passage from its opinion in the case of *W. J. Byrnes & Co. of L.A. Inc.*, v. *U.S.*, 47 Cust. Ct. 118, C.D. 2290:

While, in the generic sense, the term "pillowcase" as so defined may properly serve to describe every removable outer covering for a pillow, we seriously question whether Congress wrote this word into the tariff act with so broad a construction in view. It must be remembered in the first instance that the provision for pillowcases does not stand alone in paragraph 911(b), either as originally enacted or as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, *supra*. In a single clause, with but one rate of duty applicable, Congress has provided for both sheets and pillowcases, wholly or in chief value of cotton. This is so commonplace an expression, and so ordinary a coupling of these two items as naturally to suggest those articles which normally constitute bedding; the one to cover and protect a mattress, the other to cover and protect a bed pillow. That this is in fact, the sense in which Congress employed these two words seems to flow from the following comment in the Summary of Tariff Information, 1929, prepared for the use of the Committee on Ways and Means of the House of Representatives in connection with its consideration of the bill which became the Tariff Act of 1930. It is there stated, at page 1578:

> * * * Bed sheets are ordinarily made of wide plain-woven cloth, and pillowcases of plain-woven cloth, some of it tubular, cut to appropriate lengths and hemmed. Sheets and pillowcases are usually made from bleached cloth but some are made from cloths piece-dyed in tints to harmonize with the color scheme of the bedchamber.

In the case of *Knauth, Nachod & Kuhne* v. *United States*, 31 Treas. Dec. 213, T.D. 36689, it was held that the provision for sheets in paragraph 264 of the Tariff Act of 1913 was not a general provision intended to cover all sheets composed of cotton, but rather a "denominative" term enacted to provide for a specific article, to wit, the article "used as bedding to separate the sleeper's body from other bedclothes."

That court then stated:

It seems clear from the foregoing that what we said, and, indeed, intended to say, in the *Byrnes* case was that the article described by the provision for pillowcases in paragraph 911(b), *supra*, was the article which is commonly considered to be an item of bed linen—an article which encases a bed pillow, for sleeping and which, together with a sheet or sheets, constitutes protective covering for pillow and mattress and blanket.

\*    \*    \*    \*    \*    \*    \*

\* \* \* A cover, such as plaintiff's exhibit 1, whose primary purpose is in reality to disguise a bed pillow and adapt it to a somewhat different use, does not comport with what we consider to have been the congressional intendment in the enactment of the tariff provision for pillowcases.

Appellant contends before this court that the merchandise at bar was designed and used as a pillowcase and that it falls within the *eo*

*nomine* designation of that term. We conclude that those contentions cannot be sustained.

The court below found that appellant's corduroy articles are generally referred to as pillow covers, not as pillowcases, and this finding is clearly supported by the testimony of the witnesses for both parties. The most that appellant can claim is that some people may prefer to call the merchandise pillowcases even though they are generally and commercially known as pillow covers.

Appellant's contention with respect to the *eo nomine* designation is without merit. ▮ We agree with the above-quoted portions of the Customs Court opinions to the effect that the phrase "sheets and pillowcases," as employed in paragraph 911(b), as modified, was intended by the Congress to refer to those articles which commonly constitute bed linen. Under such circumstance, there is no basis for appellant's argument that the imported merchandise falls within the *eo nomine* designation of pillowcases.

The judgment of the Customs Court is *affirmed*.