Mast Industries, Inc., plaintiff *v.* United States, defendant

Court No. 85-9-01243

Before DiCarlo, *Judge.*

(Decided October 28, 1985)

*Grunfeld, Desiderio, Lebowitz & Silverman (Michael P. Maxwell, Robert B. Silverman, Steven P. Florsheim)* for plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office *(Veronica A. Perry),* for defendant.

### Memorandum Opinion and Order

DiCarlo, *Judge:* Plaintiff challenges the United States Customs Service's (Customs) refusal to permit entry into the United States of

merchandise invoiced as "Ladies' 100% cotton woven night shirts" from Hong Kong.

Plaintiff attempted to enter the merchandise at the port of New York on August 15, 1985. Customs determined that the merchandise was within item 383.4709 of the Tariff Schedules of the United States Annotated (TSUSA), as "Other women's, girls', or infants' wearing apparel, not ornamented: Of cotton: Not knit: Other: Blouses, shirts, suits, trousers, slacks, and shorts * * * Other: Women's." (now item 384.4782, TSUSA). Merchandise from Hong Kong within item 384.4782, TSUSA, is subject to quota under category 341.[1] Plaintiff's export visas for the merchandise were for entry under category 351, and Customs excluded the merchandise.

Plaintiff protested the exclusion on August 16, 1985, claiming that the merchandise should have been admitted under item 383.5026, TSUSA, (now item 384.5226, TSUSA) as "Other women's * * * wearing apparel * * * Other * * * Other nightwear" under category 351, or alternatively under item 383.5099, TSUSA, (now 384.5299, TSUSA)[2], as "Other" under category 359.

The protest was denied September 13, 1985, and plaintiff brought this action the same day, challenging the exclusion of merchandise from entry pursuant to 19 U.S.C. § 1514(a)(4) (1982).[3] On September 18, 1985 the Court granted plaintiff's motion to expedite defendant's answer, discovery, and the trial. Trial was held October 18, 22, and 23, 1985.

The question whether the merchandise was properly excluded is determined by whether the merchandise should be classified under item 384.47, TSUS, as a "shirt" or under 384.52, TSUS, as other women's wearing apparel.[4] Plaintiff argues that the merchandise is nightwear, and as such is not classifiable as a "shirt." Defendant contends that the merchandise is not nightwear, but concedes that if the merchandise is nightwear, it is not classifiable as a shirt.[5] Having

---

[1] Textile imports are limited by bilateral agreements entered into under the Arrangement Regarding International Trade in Textiles (commonly called the "Multifiber Arrangement" or "MFA"), December 20, 1973, 25 U.S.T. 1001, T.I.A.S. No. 7840. See American Association of Exporters and Importers—Textile and Apparel Group v. United States, 751 F.2d 1239 (Fed. Cir. 1985). These agreements usually refer to textile products by reference to categories, sometimes called "MFA categories", created by the Department of Commerce to encompass one or more TSUS items. See Correlation: Textile and Apparel Categories with Tariff Schedules of the United States Annotated (Cotton, Wool, Manmade Fibers) (Rev. Jan. 1984).

[2] The TSUSA has been amended effective September 1, 1985 and October 22, 1985. The parties agree that the change has no effect on legal or factual issues in the case. Further referenc es will be to the current TSUSA.

Merchandise entering the United States is assessed duty under the five digit Tariff Schedules of the United States (TSUS). Seven digit TSUSA numbers, the TSUS number with two digit statistical suffixes or "annotations" are established "for statistical purposes" by the Committee for the Statistical Annotation of Tariff Schedules. See 19 U.S.C. § 1484(e) (1982); Derivados Acrilicos v. Regan, 9 CIT 442. Slip Op. 85-93 (September 9, 1985).

[3] The only merchandise at issue in this case is that known as "VS 225" (entry no. 518229). Although the protest contested the exclusion of articles referred to as "VS 226" (entry No. 518230), plaintiff consented to entry of judgment in favor of defendant with regard to that merchandise.

[4] Customs' classification is presumed correct, and that presumption includes all necessary facts to support that decision. 28 U.S.C. § 2639(a) (1982); United States v. New York Merchandise, Inc., 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970).

[5] Counsel for the government stated at trial: "If the chief use of or class or kind of articles involved in this case were as nightwear, then it should be classified as nightwear." In response to a question by the Court as to what tariff provision such merchandise would be classsified under, counsel stated:
  Your Honor inquired of Government counsel, where would an article found to be chiefly used as nightwear be classified if it were of a hundred percent cotton and not a pajama-type, and it would be under 383.50, under the statistical provision 26 [now 384.5226, TSUSA] and Visa Category 351, as other nightwear.

examined all of the exhibits, and having heard all the testimony and judged the credibility of the witnesses, the Court finds that the merchandise was designed, manufactured, marketed and used as nightwear.

Plaintiff, a subsidiary of The Limited, Inc., is a contract manufacturer and importer of women's wearing apparel. Within plaintiff is a division that manufactures and imports merchandise for Victoria's Secret stores. The subject merchandise, referred to by plaintiff as the "VS 225," was developed in a collaborative effort by Victoria's Secret stores and the plaintiff. The VS 225 was adapted from a Belgian-designed women's nightwear garment, and designed as a style of nightwear sold exclusively in Victoria's Secret stores after September, 1985.

The Hong Kong factories which manufactured the VS 225 were instructed by plaintiff to manufacture the VS 225 in their lingerie divisions. The VS 225 is made of a 100 percent cotton twi ll fabric, which was selected because it has a weight and softness appropriate for nightwear.

The only apparel sold in the eighty-two Victoria's Secret stores is intimate apparel—silks, undergarments, sleepwear and robes. Victoria's Secret stores do not sell sportswear or outerwear garments.

The designers also developed robes which match the VS 225 in pattern and color. In all Victoria's Secret stores, the VS 225 is located in a sleepwear section, on floor racks located approximately four feet from wall units where the matching robes are displayed.

Two signs were displayed in Victoria's Secret stores to promote the VS 225. One of the signs reads "The Great Shirt is Here!" and the other "A wonderful oversized shirt as big as you plans."

Although the VS 225 was sold as nightwear under the circumstances described, a Customs agent who visited two Victoria's Secret locations was informed upon asking that the VS 225 could be worn as a shirt.

A designer of the VS 225 and plaintiff's accounting executive testified that the VS 225 was designed, ordered and promoted as nightwear and that the garment was intended to be used as such. The expert witnesses of both parties, while disagreeing as to whether the VS 225 is a nightwear item, agreed that most consumers purchase and use a garment in the manner in which it is marketed.[6]

In *Novelty Import Co.* v. *United States,* 60 Cust. Ct. 574, 582, C.D. 3462, 285 F. Supp. 160, 165–66 (1968), the Customs Court stated:

> It has long been held that importers and merchants have every incentive for knowing the uses to which their goods are or may be put * * *. In a number of recent cases, this court has had

---

[6] The Court heard testimony at trial that a survey of customers who purchased the VS 225 at Victoria's Secret stores was undertaken by plaintiff to ascertain how the garment was in fact used by consumers. The survey was cancelled when plaintiff discovered that the survey had included garments other than the VS 225, and the preliminary results were not introduced into evidence. No inferences were drawn by the Court concerning this survey.

occasion to point out that executives concerned with designing, framing specifications, ordering, importing, selling, distributing, and promoting an article have to know its chief uses and are competent to testify about them.

(citations omitted).

The former Court of Customs and Patent Appeals held that the merchandise itself may be strong evidence of use. *United States* v. *Bruce Duncan Co.,* 50 CCPA 43, 46, C.A.D. 817 (1963); *see United States* v. *Colibri Lighters (USA) Inc.,* 47 CCPA 106, 109, C.A.D. 739 (1960) (citing cases). The Court has examined the merchandise and concludes that it is a nightwear garment.

Having found as a factual matter that the merchandise in issue consists of nightwear, the Court agrees with the parties that the merchandise cannot be classified under the *eo nomine* provision for "shirts."

> [T]ariff terms are construed in accordance with their common and commercial meaning * * * and it is presumed that Congress formed the tariff acts according to the general usage and documentation of the trade * * * [T]he common meaning of a tariff term is a question of law to be determined by the court * * *. In answering the question of a term's common meaning, courts may consult dictionaries, lexicons, scientific authorities, and other reliable services of aids.

*Toyota Motor Sales, U.S.A., Inc.* v. *United States,* 7 CIT 178, 585 F. Supp. 649, 651 (1984), *aff'd,* 753 F.2d 1061 (Fed. Cir. 1985); *see Nippon Kogaku (USA), Inc.* v. *United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982).

Consulting lexicographic sources, the Court finds that the word "shirt" is defined in Webster's Third New International Dictionary 2098 (1981), as "a garment for the upper part of the body: as a: a loose cloth garment usu. having a collar, sleeves, a front opening, and a tail long enough to be tucked inside the waistband of trousers or a skirt * * *." On the other hand, "nightclothes" is defined in the same text as "garments to be worn to bed," *id.* at 1527; "nightgown" is defined as "a garment resembling a dress or shirt designed for wear in bed," *id.*; and "nightshirt" is defined as "a nightgown resembling a shirt," *id.* at 1528. *See also Fairchild's Dictionary of Fashion* (1975); *The Fashion Dictionary,* (Funk & Wagnalls 1973). While nightwear garments may look like shirts, and may resemble shirts, the lexicographic sources do not define nightwear garments to be shirts.

The *Summaries of Trade and Tariff Information,* TC Public. No. 285 (1968) published by the United States Tariff Commission, may be consulted in determining the common meaning of a term, *Schott Optical Glass, Inc.* v. *United States,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979), and as evidence of administrative practice, *Hawaiian Motor Co.* v. *United States,* 67 CCPA 42, C.A.D. 1241, 617 F.2d 286 (1980).

Garments described in the *Summaries* as classifiable under the provision for "women's and girl's blouses, not knit" were said to include "dress blouses, usually worn with suits, and casual blouses, usually worn with skirts, slacks, pedal-pushers, or shorts. Shirts and waists * * * are also included." *Summaries of Trade and Tariff Information, supra,* at 261. There was no mention of nightwear. By contrast, garments described under the provision for "Other: other nightwear" are said to include "nightwear or sleepwear." *Id.* at 284. More recent *Summaries* for men's and boy's shirts, and for women's, girl's, and infant's trousers, slacks and shorts do not indicate that garments designed, manufactured, marketed, and used as sleepwear are within those provisions. *See Summary of Trade and Tariff Information,* USITC Public. No. 841, Control No. 3-6-23 (1983); *Summary of Trade and Tariff Information,* USITC Public. No. 841, Control No. 3-6-7 (1981).

The parties stipulated that "in all significant respects, the VS 225 has the physical characteristics of a shirt." However, the Court finds no decision which interprets the common and commercial meaning of "shirt" under the tariff schedules to include all forms of shirts. To the contrary, the Customs Court held that an "undershirt" was not a "shirt" within paragraph 919 of the Tariff Act of 1930. *Yamatoya Co.* v. *United States,* Abs. 31687, 68 Treas. Dec. 982 (1935) ("shirt" understood to mean an "outer garment * * * as distinguished from an undershirt, nightshirt, etc.").

Upon considering lexicographic sources, the Tariff Summaries, and case law, and based upon the Court's own understanding of the common and commercial meaning of the word "shirt," the Court agrees with the litigants' conclusion that garments used as nightwear do not come within the meaning of the word "shirt" as provided for under item 384.47 of the tariff schedules.

To conclude, the Court finds that the merchandise was designed, manufactured, marketed and used as nightwear, based upon the testimony, the Court's judgment of the credibility of the witnesses, and the depositions and all other documents and exhibits submitted at trial. The Court holds that the presumption of correctness which attaches to Customs' classification has been overcome, and that the VS 225, as nightwear, is entitled to enter the United States under item 384.5226, TSUSA and quota category 351. Judgment entered accordingly.