(C.D. 4572)

BRENTWOOD ORIGINALS *v.* UNITED STATES

Court No. 71–11–01871

(Decided December 9, 1974)

*Glad, Tuttle & White* (*Robert Glenn White* and *Edward N. Glad* of counsel) for the plaintiff.

*Carla A. Hills,* Assistant Attorney General (*Gilbert Lee Sandler,* trial attorney), for the defendant.

WATSON, Judge: This action raises the question of the proper classification of imported velveteen and corduroy covers for articles referred to in the entry papers as "bedrests" and "wedge bolsters." The merchandise in question was classified as unornamented cotton furnishings of pile or tufted construction, the velveteen under item 366.60, the corduroy under 366.63 both as modified by T.D. 68–9 and dutiable at the respective rates of 34% and 42.5% ad valorem.

Plaintiff claims classification as unornamented cotton bolster cases under item 363.30 as modified by T.D. 68–9 dutiable at the rate of 10.5% ad valorem.

The articles in question are designed to enclose a long wedge-shaped cushion and a pillow-shaped form with two short arm extensions. The testimony establishes to my satisfaction that the filled articles are chiefly used on beds to provide support for individuals in the multitude of uses other than slumber to which beds are put. I have

in mind such uses as watching television or reading while in bed.

The imported articles conform to my understanding of the term "bedding" as explained in headnote 1(a) to subpart B of part 5 of schedule 3 [1] as articles chiefly used as bed furnishings. I note that nothing in the headnote suggests that the articles in question be used strictly for a "sleeping" function, a limitation advocated by defendant. On the contrary, the inclusion of "bedspreads" and "coverlets" suggests the inclusion of articles which, though used to furnish a bed, are not ordinarily used for sleeping.

Since the imported articles appear to belong within the ambit of the provisions for "bedding" it remains only to be seen if they are bolster cases within the meaning of that term in the description "Sheets and pillowcases (including bolster cases)." Based upon what I consider the common meaning of the term bolster cases and the general suitability of the classification under the provisions for bedding, I reach an affirmative conclusion on this point. While there is some authority for a definition of a bolster as a long, cylindrical pillow, the better and more general view is that a bolster is any sort of cushion chiefly used to support an individual on a bed. It would not comport with my view of the significance which must be given the language of the tariff schedules if one were to conclude that the term "bolster cases" was mentioned only to include one additional shape of pillow. Surely a cylindrical-shaped pillow would fall under the term "pillow" without the necessity of further elaboration. To my mind the essential defining characteristic of a bolster is to be found in its function of support, which is an ascertainable characteristic, and not in its shape, which is a variable subject to the infinite variations of which human ingenuity is capable. I would therefore say that bolster cases are the covers of articles other than conventional pillows which are chiefly used to support persons resting on a bed.

I am aware of cases decided under paragraph 911(b) of the Tariff Act of 1930 which interpreted the language "sheets and pillowcases" to exclude corduroy pillowcases in part on the ground that the statutory phrase was one which naturally suggested the common items used in sleeping on a bed.[2] In view however of the different structure and wording of the tariff schedules, these cases, as well reasoned as they were, are not controlling or influential as regards the new language. As mentioned earlier, the new explanation of the basic term "bedding" appears to include "non-sleeping" articles and the addi-

---

[1] The relevant portion of the headnote reads :

    1. For the purposes of this subpart—

      (a) the term "bedding" means sheets, pillowcases, blankets, bedspreads, coverlets, quilts, comforters and other articles, by whatever name known, chiefly used as bed furnishings * *, *.

[2] See, *W. J. Byrnes & Co. of L.A., Inc., Fortune Trading Co., Inc.* v. *United States*, 47 Cust. Ct. 118, C.D. 2290 (1961) and *Victor B. Handal & Bro., Inc.* v. *United States*, 55 Cust. Ct. 263, C.D. 2588 (1965), *aff'd, Same* v. *Same*, 54 CCPA 18, C.A.D. 895 (1966).

tion of specific mention of bolster cases in my opinion indicates a scope considerably beyond that of the commonly known phrase "sheets and pillowcases." Again I cannot see why Congress would make special mention of a single rather than obscure variety of pillowcase. I prefer the view that Congress was more meaningfully indicating coverage of a variety of bed furnishings, related to pillowcases but not strictly belonging to that category.

In conclusion, I note that defendant's position is correct that protest number 2704–1–000893 relating to entry 71–119826 did not protest the items invoiced as "Corduroy Cushion Covers 'Bedrests'" and that the plaintiff's claim as it relates to that particular merchandise must be overruled. Accordingly, I grant defendant's motion to dismiss plaintiff's claim as it relates to the aforesaid corduroy covers in entry 71–119826.

As to the remaining merchandise, plaintiff's claim for classification pursuant to item 363.30 as modified by T.D. 68–9 as unornamented cotton bolster cases is correct and judgment will be entered accordingly.