**HAWAIIAN MOTOR COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79-27.**

United States Court of Customs and Patent Appeals.

March 13, 1980.

Stein, Shostak, Shostak & O'Hara, Inc., Los Angeles, Cal., attys. of record for appellant; John N. Politis, Los Angeles, Cal., of counsel.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, New York City, Director, Joseph I. Liebman, New York City, Atty. in Charge Field Office for Customs Litigation, John J. Mahon, New York City, Commercial Litigation Branch, attys. of record for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and FORD,* Judge.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court in *Hawaiian Motor Company v. United States*, 82 Cust.Ct. 70, C.D. 4790, 473 F.Supp. 787 (1979), sustaining the classification of imported merchandise by the United States Customs Service as hand-directed or -controlled tools with pneumatic or self-contained non-electric motor, and parts thereof. We affirm.

### The Merchandise

The imported merchandise consists of a 22.5 cc displacement gasoline engine, stand, tool kit, and two blades packed in one carton, and a drive shaft packed separately in another carton. It is described on commercial invoices as "'Xenoah' BCD Brush Cutters" and was exported from Japan in 1975. In the United States, it is known as the "Green Machine 3000" (hereinafter "Green Machine"). From testimony adduced in the Customs Court, it appears that the two blades which come with the unit are accessories, and that the principle use of the Green Machine is with a nylon cord trimmer which is not imported but is added to the merchandise in the United States.

When the Green Machine is used with the nylon cord trimmer, its function is to cut weeds, grass, and similar vegetation. If the blades are attached, the Green Machine can be used to cut brush, as well as to trim branches from trees. The engine is equipped with an all-position diaphragm carburetor which enables the cutter to be turned upward so that it will reach overhead in connection with work on trees or hillsides.

### Relevant Statutes

Both the classification claimed by appellant, and that assigned to the merchandise

---

* The Honorable Morgan Ford, United States Customs Court, sitting by designation.

upon liquidation, appear in Schedule 6, Part 4 of the Tariff Schedules of the United States (TSUS).

Claimed under:

> Subpart C.—Agricultural and Horticultural Machinery; Machinery for Preparing Food and Drink

> Subpart C headnote:

> 1. The provisions of item 666.00 for "agricultural and horticultural implements not specially provided for" do not apply to any of the articles provided for in schedule 6, part 2, part 3 (subparts A through F, inclusive), part 5 (except item 688.40), or part 6, *or to any of the articles specially provided for elsewhere in the tariff schedules*, but interchangeable agricultural and horticultural implements are classifiable in item 666.00 even if mounted at the time of importation on a tractor provided for in part 6B of this schedule. [Emphasis ours.]

> \* \* \* \* \* \*

> 666.00 Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, milking machines, on-farm equipment for the handling or drying of agricultural or horticultural products, and agricultural and horticultural implements not specially provided for and parts of any of the foregoing......................... Free

Classified under:

> Subpart F.—Machines for Working Metal, Stone, and Other Materials.

> \* \* \* \* \* \*

> Hand-directed or -controlled tools with pneumatic or self-contained non-electric motor, and parts thereof:

> \* \* \* \* \* \*

> 674.70 Other ................... 4.5% ad val.

### Customs Court

The Customs Court sustained the classification which was assigned upon liquidation. The court held that the testimony and evidence supported the inclusion of the Green Machine under item 674.70. It was "firmly of the opinion that the Xenoah BCD Brush Cutter is described by and falls squarely within the provision for hand-directed or -controlled tools with self-contained non-electric motor in item 674.70 and is, therefore, specially provided for in the TSUS." 82 Cust.Ct. at ——, 473 F.Supp. at 791.

In particular, the court was not convinced by appellant's argument that the term "non-electric motor," as used in item 674.70, does not include internal combustion engines. The argument was that Congress had used the term elsewhere in the TSUS in a manner which did not include internal combustion engines and that there was no evidence that a different meaning was intended in item 674.70.

The court also held that appellant had failed to carry its burden of proving that item 666.00 is the proper classification for the Green Machine. Item 666.00 is a so-called "chief use" provision, and is thus governed by TSUS *General Interpretative Rule* 10(e)(i), which requires that classification is controlled by the chief use of articles of the class or kind to which the imported merchandise belongs at the time of the importation. The Customs Court found two faults with appellant's arguments on this issue. First, the court noted that the chief use of the Green Machine was with the article in a different condition from that in which it was imported, namely, with the use of the nylon cord trimmer which had been added in the United States. In addition, the court noted that there was little evidence in the record concerning the use of blade-equipped brush cutters in the United States.

### OPINION

Since we agree with the Customs Court that the Green Machine is properly classifiable under item 674.70, which specially provides for it, we affirm its decision and judgment on that basis. There is no need to address the arguments concerning the propriety of classification under item 666.00.

■ Inclusion that under item 674.70 requires two things of a tool: that it be hand-directed or -controlled; and that it be powered by a self-contained non-electric motor. Appellant does not dispute that the first requirement is met; the outcome of the controversy therefore depends upon whether an internal combustion engine is a non-electric motor within the meaning of that term as used in TSUS item 674.70.

Appellant's argument that an internal combustion engine is not a non-electric motor proceeds as follows. Appellant first notes that the TSUS provides for "Internal combustion engines and parts thereof" in the superior headings to items 660.40 through 660.55, and for "Nonelectric engines and motors not specially provided for, and parts thereof" in the superior headings to items 660.75 through 660.86. If the internal combustion engines were to be imported separately, they would be classified under items 660.40 through 660.55 for internal combustion engines, and not under items 660.75 through 660.86 for non-electric engines and motors. Therefore, it is argued, an internal combustion engine is not a non-electric motor.[1]

We do not accept this reasoning. We agree with government counsel, who stated that the superior heading to items 660.75 through 660.86 identifies non-electric engines and motors *which are not specially provided for elsewhere* in that subpart of Part 4. The internal combustion engine, if imported alone, would not be classified under any of these items because it is specially provided for in items 660.40 through 660.55. The import of the superior headings for these items is not that internal combustion engines are not non-electric motors but that they are non-electric motors which have been specially provided for elsewhere.

■ Furthermore, we do not see the distinction appellant wishes us to make between "motors" and "engines" which would preclude classification of the imported merchandise under item 674.70. We see no Congressional intention to draw so fine a line. We view the organization of Schedule 6 as making a general distinction between tools which are powered by electricity and those which are not.

■ Item 683.20, found in Part 5 of Schedule 6, is identical to the item under which the Green Machine was classified (674.70) except that it calls for a "hand-di-

rected or -controlled tools [having a] self-contained *electric* motor." (Emphasis ours.) We thus read item 674.70 as requiring that a hand-directed or -controlled tool be powered by a source other than electricity. Internal combustion engines are such power sources.

■ Adoption of appellant's view would force the classification of hand-directed or -controlled tools having self-contained internal combustion engines into some basket provision rather than into item 674.70. One of the purposes of the TSUS, insofar as Schedule 6 is concerned, was to reduce the importance of the basket provisions of the Tariff Act of 1930. *See Tariff Classification Study*, Schedule 6, 257 (1960). Appellant's suggested interpretation of the TSUS would not serve to produce this result.

Our conclusion is bolstered by reference to the *Summaries of Trade and Tariff Information*, Schedule 6, Vol. 6, 127 (1968), which states (emphasis ours):

Hand tools that are powered by self-contained non-electric motors, other pneumatic tools, include chain saws, drills, grinders, and the like. *The principal articles of trade in this category are chain saws that are powered by internal combustion engines.* These saws can be used in remote locations where electric power is not readily available for felling trees and cutting them to length.

■ While *Summaries of Trade and Tariff Information* is not suitable for use as evidence of Congressional intent (as legislative history of the TSUS), *see Volkswagen of America, Inc. v. United States*, 68 Cust.Ct. 122, 128–29, C.D. 4348 (1972), *aff'd*, 61 CCPA 41, C.A.D. 1115, 494 F.2d 703 (1974), it does show that the administrative practice has been to regard internal combustion engines as non-electric motors for the purposes of item 674.70. We see no error in this practice.

The judgment of the Customs Court is *affirmed.*

1. In addition, appellant argues that, if anything, an internal combustion engine is a non-electric *engine* since Congress knew how to differentiate between a motor and an engine. This argu-ment is that a tool powered by a non-electric *engine* is not properly classifiable under an item requiring a tool to have a non-electric *motor.*