The **WEST BEND COMPANY, DIVISION OF DART INDUSTRIES, INC.**, Plaintiff,

v.

**UNITED STATES, Defendant.**

**Court No. 81–07–00844.**

United States Court of International Trade.

Oct. 28, 1988.

Barnes, Richardson & Colburn (Andrew P. Vance and Sandra Liss Friedman, New York City, of counsel), for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City, Barbara M. Epstein, Commercial Litigation Branch, for defendant.

## MEMORANDUM OPINION

WATSON, Judge:

This action raises the issue of the correct classification of an electric hot-air corn popper known as the "West Bend Poppery Model No. 5459" and imported between April, 1980 and January, 1981.

The merchandise was classified as a portable electro-thermic appliance under Item 684.20 of the Tariff Schedules of the United States ("TSUS") which, under a general heading listing various articles which use electricity to produce heat, specifically provides for "toasters, waffle irons, skillets, ovens, stoves, coffee makers and other portable electro-thermic kitchen and household appliances" to be dutiable at a rate of 8.1% ad valorem.

Plaintiff's first claim was for classification under a general heading providing for other electro-*mechanical* household appliances, specifically as "other" such articles, classifiable under Item 683.32 of the TSUS and dutiable at a rate of 5.8% ad valorem. Plaintiff made an alternative claim for classification as other electric articles not specially provided for under Item 688.42, dutiable at the rate of 5.2% ad valorem. Plaintiff also moved at trial to amend its pleadings to assert another alternative claim for classification under the same general heading as the classification assigned by the government, but under a provision for articles of the type named in the general heading "other" than those provided for in the disputed Item 684.20. The last alternative claim is for classification under Item 684.-50, with duty payable at the rate of 5.3% ad valorem. The Court hereby grants that motion in the interest of providing a full and fair opportunity for plaintiff to present its alternative claims.

The essence of this dispute revolves around the fact that, in addition to the indisputable presence of an electro-thermic component, the imported article also has an electro-mechanical component consisting of an electric motor and fan. The question for the Court is to what extent, if any, the presence and importance of the electric motor and fan detracts from the government's classification of this article as an electro-thermic kitchen appliance and requires another classification.

The imported device, exclusive of its clear plastic top, has the appearance of a tapered cylinder approximately one foot high, with an electric power cord entering at the bottom. Under a recess at the front, near the bottom, a number of openings allow air to enter the interior and a switch for turning the device on or off is located nearby. At the top of the cylinder, one looks down into a circular well which descends for about half the height of the cylinder, ending in a metal cup at the bottom, which cup has slits or vanes all around its walls at regular intervals. If one then examines a cutaway of the cylinder one can see that the aforementioned cup is the popping chamber and is surrounded by a heating element consisting of a ceramic form, shaped like an ashtray, wrapped in a metal spring. The spring's resistance to electricity generates heat in that element of approximately one thousand degrees. Under the heating element is a mechanical thermostat which shuts off the article if the temperature at that location reaches 275 degrees. A fan driven by a motor is located underneath, in the nethermost position of the cylinder. In opera-

tion, the fan draws in air from the outside and the air is heated by the heating element. The heated air enters the popping chamber through the slits or vanes, imparting to the corn kernels a circular motion which subjects them to heat in an even manner and eventually raises their temperature to the popping point. As the corn begins to pop, it rises in the well and, by virtue of both its own expansion and the flow of air, it is conveyed out through the top and down the chute which exits the top. The wise user has an appropriate receptacle waiting for this important American contribution to world cuisine. The emptying process continues until the well is empty or virtually empty except for those few kernels which seem to be impervious to heat.

In functional terms it can fairly be said that this device contains an electro-thermic element which is essential to the popping of the corn and an electro-mechanical element which is also essential to the process. In the opinion of the Court, the evidence of record and the principles developed in case law in this area indicate that this importation is not adequately or accurately described as an "electro-thermic appliance." First of all, it must be noted that the provision for electro-thermic appliances is not a description by name. Therefore, the basic principle that tariff acts were enacted to include all forms of *named* articles does not apply here. That line of case law is represented by *Clairol, Inc. v. United States*, 7 CIT 377 (1984) [1984 WL 3718] in which the Court held that electric tweezers were properly classifiable as tweezers.

Classification as an electro-thermic appliance is, in essence, classification by reference to the predominant operating principle of the importation. In the opinion of the Court, the weight of the evidence at trial and the reasoning of the most relevant case law lead to the conclusion that this a hybrid object which cannot properly be classified either under an electro-thermic classification or under an electro-mechanical classification.

The Court is satisfied that the only way in which this article can pop corn in a truly useful and safe manner is by the combined operation of the electro-thermic heating component and the electro-mechanical fan component. The government argues that if the fan and thermostat were removed from the circuitry the importation could still do some popping of corn in the heated chamber, but, in the view of the Court, this would be a dangerous and entirely unsatisfactory use of the article. The electro-mechanical component is an integral and important part of the popping process.

The best demonstration of the important combined function of the two components was the testimony as to the normal operation of the device and the Court's confirmation of its normal operation by actual use of joint Exhibit A. A measure of corn kernels was deposited in the well of the device; the cover was put in place, and it was switched on. The kernels began a massed, swirling movement clearly visible from above. The movement continued for a few minutes until some of the kernels began to pop. As the popped corn rose in the cylinder, the swirling of the remaining unpopped kernels could still be heard. Within about four minutes the popped corn was beginning to flow out of the chute. Ultimately, all of the popped corn was blown out and only a few unpopped kernels remained careening around the interior under the influence of the blowing air. This demonstration, as well as the detailed testimony at trial, demonstrated that in the normal operation of this article, the fan component draws in air from the outside, causes the heated air to move through the chamber with sufficient force to swirl the kernels around, distribute the heat evenly, and then contributes to the rising of the popped corn and the eventual ejection of all the popped corn. The functional importance of the electro-*mechanical* component is such that it would be unreasonable to say that this is simply an electro-thermic appliance.

The Court is certain that it was not the intention of this provision for electro-thermic appliance to encompass all devices having electro-thermic components regardless of the significance of interrelated components. From the examples of electro-

thermic kitchen and household appliances named in Item 684.20 the toaster is the only article which can be considered to routinely have a mechanical adjunct of some sort, namely, the mechanical element which either pops up the toast or conceivably opens the door at the conclusion of the toasting process. But that terminal function does not begin to approach the continuous involvement of the electro-mechanical element in the function of the imported corn popper and the presence of the toaster exemplar cannot overcome the legal principles which govern this classification.

Thus, if we were to reason from the general examples given in the classified provision, we would have to say that they are predominantly electro-thermic in their function, and have no other significant operating components of other types, and are therefore unlike the corn poppers at issue. The cases which are most directly on point are *Robert Bosch Corp. v. United States*, 63 Cust.Ct. 96, C.D. 3881 (1969) and *Harper Wyman Co. v. United States*, 1 CIT 108 (1981) [1981 WL 2442]. In the former case the Court held that an imported article which performed a mechanical function of engaging the starter of a car into gear with the fly wheel, in addition to an electrical function of causing the current to flow from the car battery to the car ignition system, was not adequately described as an electrical switch. The Court reasoned as follows:

> The principle is well-established that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. *Cragston Corporation v. United States*, 51 CCPA 27, C.A.D. 832 (1963); *United States v. The A.W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962); *Garrard Sales Corp. v. United States, supra* [35 CCPA 39 (1947)], and *Hirsch & Co. et al. v. United States*, 4 Ct.Cust.Appls. 82, T.D. 33365 (1913). By contrast where the difference is in the nature of improvement

or amplification, and the essential character is preserved or only incidentally altered, the applicable rule is as expressed in *Nootka Packaging [Packing] Co. et al. v. United States*, 22 CCPA 464, T.D. 47464 (1935), that an unlimited *eo nomine* statutory designation includes all forms of the article in the absence of a contrary legislative intent or commercial designation.

\* \* \* \* \* \*

We are of the opinion on the basis of the instant record that the starter solenoid switch here involved falls within the category of articles covered by the so-called "more than" rule. *Since it operates mechanically as well as electrically and both functions are significant in activating the starter motor*, it is more than an electrical switch or other electrical apparatus for making or breaking electrical circuits within the intendment of Item 685.90, TSUS. (63 Cust.Ct. at 103–104, emphasis supplied.)

In *Harper Wyman Co. v. United States*, the Court held that the imported combination of a mechanical switch and a thermostat, both of which would have been specially provided for as separate articles, had resulted in a new article which was not adequately described by either of the two provisions.

The plaintiff's claim for classification as an electro-*mechanical* appliance, is untenable for exactly the same reason that makes the government's classification incorrect. The imported article is more than an appliance which functions on electro-mechanical principles. The plaintiff's alternative claim for classification under Item 684.50, another subcategory of electro-thermic appliances, is out of the question. Whatever may be the characteristics of articles falling under that residual provision, they must still be electro-thermic in essence, without conflicting, additional essential components.

The evidence of record and the case law establish that this popcorn popper cannot be adequately described either as an electro-thermic appliance or as an electro-me-

chanical appliance. As a result, the only accurate and fully satisfactory classification for this article is as an electrical article not specially provided for under Item 688.-42 of the TSUS. Judgment will enter accordingly.

## JUDGMENT