The WEST BEND COMPANY, DIVISION OF DART INDUSTRIES, INC., Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–Appellant.

No. 89–1218.

United States Court of Appeals, Federal Circuit.

Dec. 19, 1989.

Andrew P. Vance, Barnes, Richardson & Colburn, of New York City, argued for

plaintiff-appellee. With him on the brief was Sandra Liss Friedman.

Barbara M. Epstein, Commercial Litigation Branch, Dept. of Justice, of New York City, argued for defendant-appellant. With her on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in charge, Intern. Trade Field Office.

Before BISSELL, ARCHER and MAYER, Circuit Judges.

ARCHER, Circuit Judge.

The United States appeals from the judgment of the United States Court of International Trade, 703 F.Supp. 93 (1988), that West Bend's hot-air popcorn poppers, known as the "Poppery Model No. 5459," are dutiable under item 688.43 [1] of the Tariff Schedules of the United States (TSUS) at 5.3 percent *ad valorem* and not, as the United States Customs Service determined, under item 684.20 at 8.1 percent. We reverse.

### Background

West Bend protested the classification for duty purposes of the corn poppers imported by it during parts of 1980 and 1981 under TSUS item 684.20. After denial of its protest, West Bend filed suit in the Court of International Trade under 28 U.S.C. § 1581(a) (1982).

West Bend's Poppery Model No. 5459 is a countertop hot-air corn popper. The trial court found that it depends on an electromechanical component, i.e., an electric motor and fan, and an electrothermic component, i.e., an electric heating element, to perform its overall function, and that both components contribute to its safe and effective operation.

The relevant statutory provisions of the TSUS are as follows:

*Schedule 6, part 5:*

Electric instantaneous or storage water heaters and immersion heaters;

electric soil heating apparatus, and electric space heating apparatus; electric hair dryers, hair curlers, and other electric hair dressing appliances; electric flatirons; *electrothermic kitchen and household appliances;* electric heating resisters other than those of carbon; all the foregoing and parts thereof:

. . . .

Item 684.20 Toasters, waffle irons, skillets, ovens, stoves, coffee makers and *other portable electrothermic kitchen and household appliances* ....... 8.1%

. . . .

Electrical articles and electrical parts of articles, not specifically provided for:

. . . .

Item 688.43 Other .............. 5.3%

(Emphasis added.) 19 U.S.C. § 1202 (1982).

The trial court delineated the issue before it as follows:

The question for the Court is to what extent, if any, the presence and importance of the electric motor and fan detracts from the government's classification of this article as an electro-thermic kitchen appliance and requires another classification.

(at 94.)

In concluding that the Customs Service's classification under item 684.20 was erroneous, the court said:

In the opinion of the Court, the weight of the evidence at trial and the reasoning of the most recent case law lead to the conclusion that [the West Bend corn popper is] a hybrid object which cannot properly be classified either under an electrothermic classification or under an electromechanical classification.

(at 95.)

As a result, the Court of International Trade held that West Bend's corn popper should be classified under TSUS item 688.-

---

**1.** The trial court inadvertently listed the classification for "[e]lectrical articles ... not specifically provided for" as TSUS item number 688.42.

As agreed by the parties, the correct number is 688.43.

43, "electrical articles ... not specifically provided for."

## OPINION

■ "The meaning of customs classification terms ... is an issue of law which we review independently, while the question whether a particular item fits that meaning is a question of fact which we review under the clearly erroneous standard." *Stewart–Warner Corp. v. United States,* 748 F.2d 663, 664–65 (Fed.Cir.1984); *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 788 (Fed.Cir.1988). The classification given an article by the Customs Service is presumed to be correct and the burden of establishing otherwise rests on the challenger, *see* 28 U.S.C. § 2639(a)(1) (1982); *New York Merchandise Co., Inc. v. United States,* 435 F.2d 1315, 1318 (CCPA 1970). We conclude that the phrase "electrothermic kitchen and household appliances" in TSUS item 684.20 and its superior heading was too narrowly construed by the trial court and, therefore, that it erred in classifying West Bend's corn popper under the basket clause of TSUS item 688.43.

The Court of International Trade held that the presence of the electromechanical component, consisting of an electric motor and fan, required that the West Bend corn popper be considered "more than" an "electrothermic ... appliance." In so doing, the court relied on the principle that where an article is determined to be more than the article described in the tariff item it cannot be classified within that provision. *See, e.g., Robert Bosch Corp. v. United States,* 63 Cust.Ct. 96, C.D. 3881 (1969); *Harper Wyman Co. v. United States,* 1 CIT 108, 1981 WL 2442 (1981).

■ In order to determine if an article is more than that provided for in the particular tariff provision, it is necessary first to ascertain the meaning of the tariff provision and then to compare that meaning with the merchandise in issue. *See E. Green & Son (New York), Inc. v. United States,* 450 F.2d 1396, 1398 (CCPA 1971). As an aid in determining the meaning of a term or word used in a particular tariff provision, a court may consider, in addition to the language of the provision and any pertinent indication of legislative intent, other related tariff provisions, scientific authorities, dictionaries, and other lexicons, such as expert testimony. *Id.; see also Schott Optical Glass, Inc. v. United States,* 612 F.2d 1283, 1285 (CCPA 1979).

In this case, the most telling indication of the meaning of the term "electrothermic ... appliances" can be deduced from the language used in the superior heading to items 683.30 and 683.32. In this related provision, the term "appliance" is used in a manner indicating that it was intended to encompass merchandise that has more than one type of electrical component.

Electromechanical appliances are described in the superior heading to items 683.30 and .32 as follows:

> Vacuum cleaners, floor polishers, food grinders, and mixers, juice extractors *and other electromechanical appliances,* all the foregoing with self-contained electric motors, of types used in the household, hotels, restaurants, offices, schools, or hospitals (*but not including* factory or other industrial appliances or *electrothermic appliances*), and parts thereof:
>
> 683.30  Vacuum cleaners, floor polishers, and parts thereof.... 6.5% ad val
> 683.32  Other ........... 6% ad val

(Emphasis added.) 19 U.S.C. § 1202 (1982).

As the emphasized language of the superior heading shows, electromechanical appliances and electrothermic appliances are not mutually exclusive groups; the former may contain the latter and vice versa. Accordingly, but for their express exclusion from the superior heading to items 683.30 and .32, appliances which contain both electromechanical and electrothermic components would be classified as electromechanical appliances. We are convinced that by excluding such hybrid merchandise from items 683.30 and .32, Congress plainly expressed its intention that these devices be classified as electrothermic appliances under the superior heading to item 684.20 if otherwise covered by the language of those items.

■ This conclusion is buttressed by the *Brussels Nomenclature,* which may be

treated as legislative history to the tariff provisions where the language of the tariff provision and a *Brussels* section is very similar. *See S.G.B. Steel Scaffolding & Shoring Co., Inc. v. United States,* 82 Cust.Ct. 197, 213 C.D. 4802 (1979); Sturm, *Customs Laws & Administration,* § 52.2 at 16, 17 (3d ed. 1988), and cases cited therein. Section XVI, 85.12 of the *Brussels Nomenclature* is substantially the same as the superior heading to TSUS item 684.20.[2] Enumerated in the explanatory note to *Brussels,* section XVI, 85.12, as being included therein are articles which contain, in addition to an electrothermic element, a motor and fan, such as hair dryers, domestic ovens of all types, hand dryers and face dryers.[3] Accordingly, it can be inferred that the superior heading to TSUS item 684.20 was intended by Congress to encompass these hybrid items as well.

The term "electro-thermic appliances" is defined in the *Summary of Trade and Tariff Information* (September 1982) (Summary) (for TSUS items 66.20 (pt.), 670.40–670.42, 670.43 (pt.), 683.30–683.50, and 684.10–684.55) as follows:

Electro-thermic appliances are devices that contain an electric element to produce heat for cooking, warming, and/or heating. *Some appliances may be equipped with an electric motor in addition to the heating device.*

*Id.* at 2 (emphasis added). Although the Summary was written subsequent to the tariff provision at issue and cannot be considered as legislative history, it is helpful in ascertaining the common meaning of tariff terms. *See Novo Enzyme Corp. v. United States,* 82 Cust.Ct. 240, 248, C.D. 4806

(1979); *see also Hawaiian Motor Co. v. United States,* 617 F.2d 286, 289 (CCPA 1980).

Lastly, the term "appliance" is defined in Webster's *Third New International Dictionary* (1976 ed.) as "a household or office utensil, apparatus, instrument, or machine that utilizes a power supply, esp. electric current (as a vacuum cleaner, a refrigerator, a toaster, an air conditioner)." *Id.* at 105. Thus, in common parlance, this term would encompass not only articles that use electricity as a heat (or cooling) source but also articles that use electrically-powered mechanical components.

We are convinced that the narrow scope the trial court gave the term "electrothermic ... appliances" was legally incorrect. When TSUS item 684.20 is read in conjunction with other relevant tariff provisions and when consideration is given to other indicators of legislative intent as noted above, it is apparent that the term "electrothermic ... appliances," as used in TSUS item 684.20 and its superior heading, was intended to encompass merchandise having both electrothermic and electromechanical components.

The trial court stated that "[c]lassification as an electro-thermic appliance is, in essence, classification by reference to the predominate operating principle of the importation." The court cited no lexicons, scientific authorities, trade or commerce usages, legislative history, or other reliable sources of information (such as expert testimony) that would support its conclusion; it limited the term "electrothermic ... appliances" as it did because "the toaster is the only article [listed by exemplar therein] which can be considered to routinely have a

---

**2.** Heading to *Brussels,* section XVI, 85.12, provides as follows:

Electric instantaneous or storage water heaters and immersion heaters; electric soil heating apparatus and electric space heating apparatus; electric hair drying appliances (for example, hair dryers, hair curlers, curling tong heaters) and electric smoothing irons; electro-thermic domestic appliances; electric heating resistors, other than those of carbon.

**3.** Heading 85.12(E) of *Brussels* at page 1423 provides for "Electro–Thermic Machines and Appliances For Domestic Use." The note under the heading states as follows:

This group includes all electro-thermic machines and appliances *provided* they are *normally used in the household.* Certain of these have been referred to in previous parts of this Explanatory Note (e.g., electric fires, geysers, hair dryers, smoothing irons, etc.). Others include:

. . . .

(4) Domestic ovens and domestic cookers of all types, including infra-red, high frequency induction, and combined gas-electric appliances; . . . .

. . . .

(7) Hand dryers, face dryers and the like. . . . .

mechanical adjunct of some sort...." It concluded that the electromechanical element in a toaster did not overcome the legal principle the court sought to apply because of its terminal utility in the toasting process. We are convinced, however, that the relationship between the electromechanical and electrothermic components of a toaster is an insufficient signpost by which to judge the meaning of these tariff provisions, particularly when the statutory language, legislative history, and other available sources point to a contrary meaning of the term.

Consequently, since West Bend has not met its burden of proving that the Customs Service improperly classified its corn poppers, *see* 28 U.S.C. § 2639(a)(1), the judgment of the trial court is reversed and the government's classification of those items under TSUS item 684.20 is reinstated.

REVERSED.