NECO ELECTRICAL PRODUCTS, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court Number 82–01–00077

(Dated March 19, 1990)

*Baker & McKenzie, (William D. Outman, II),* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Barbara M. Epstein),* for defendant.

RE, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of merchandise imported from Mexico and described on the customs invoice as "heating pads." The merchandise entered at the port of Brownsville, Texas.

The merchandise was classified by the Customs Service as "[t]oasters, waffle irons, skillets, ovens, stoves, coffee makers and other portable electro-thermic kitchen and household appliances," under item 684.20 of the Tariff Schedules of the United States (TSUS). Consequently, duty was assessed at the rates of 8.1 per centum or 7.7 per centum *ad valorem,* depending upon the year of entry.

Plaintiff protests this classification and contends that the merchandise is properly classifiable under item 684.50, TSUS, which is now codified at item 684.48, TSUS, the "basket" provision for electro-thermic kitchen and household appliances, dutiable at a rate of 5.3 per centum or 5.1 per centum *ad valorem,* depending upon the year of entry. Alternatively, plaintiff claims that the merchandise is classifiable as "[e]lectrical articles and electrical parts of articles, not specially provided for," under item 688.45, TSUS, which is now codified at item 688.42, TSUS, dutiable at a rate of 5.3 per centum or 5.1 per centum *ad valorem,* depending upon the year of entry.

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified under:*

Schedule 6, Part 5:

Electric instantaneous or storage water heaters and immersion heaters; electric soil heating apparatus, and electric space

heating apparatus; electric hair dryers, hair curlers, and other electric hair dressing appliances; electric flatirons; *electro-thermic kitchen and household appliances;* electric heating resistors other than those of carbon; all the foregoing and parts thereof:

\*       \*       \*       \*       \*       \*       \*

Item 684.20    Toasters, waffle irons, skillets, ovens, stoves, coffee makers and other *portable electro-thermic kitchen and household appliances* . . . . . . . . . . 8.1% *ad val.* (1980)
7.7% *ad val.* (1981)
(emphasis added)

*Claimed under:*

Other:

Item 684.50    Other . . . . . . . . . . . . . . . . . . . . . . 5.3% *ad val.* (1980)
5.1% *ad val.* (1981)

*Alternatively Claimed Under:*

Schedule 6, Part 5:

Electrical articles and electrical parts of articles, not specially provided for:

Item 688.45    Other . . . . . . . . . . . . . . . . . . . . . . 5.3% *ad val.* (1980)
5.1% *ad val.* (1981)

The question presented is whether the imported heating pads have been properly classified as "portable electro-thermic kitchen and household appliances," under item 684.20, TSUS, as classified by Customs, or whether they are properly classifiable under item 684.50, TSUS, the "basket" provision for portable electro-thermic kitchen and household appliances, as claimed by plaintiff. Alternatively, plaintiff contends that, if the heating pads are not to be classified under the 'basket' provision, they are classifiable as "[e]lectrical articles and electrical parts of articles, not specially provided for," under item 688.45, TSUS.

The parties have stipulated the essential facts, and have submitted the case for decision in lieu of trial.

In order to decide the question presented, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984).

After a careful examination of the merchandise, the stipulated facts and supporting papers, the pertinent tariff provisions and case law, it is the determination of the court that plaintiff has not overcome the presumption of correctness that attaches to the classification by Customs. *See* 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co.,* 733 F.2d at 878. Since the court holds that Customs has correctly classified the imported merchandise under item 684.20, TSUS, the classification is sustained and the action dismissed.

## BACKGROUND

The imported articles consist of various styles of heating pads. As indicated by the stipulated facts, "[a] heating pad is a portable thermal electric appliance * * *." Hence, it is clear at the outset that the imported merchandise consists of portable electro-thermic appliances. It is significant that it is stipulated that the heating pads are most frequently used in the household, although the parties acknowledge that they are also used in hospitals and elsewhere.

The heating pads at issue in this case are typically used "under, around or atop a portion of the human anatomy." The heating pads are intended "to ease body discomfort caused by muscle strain and to help relieve comparable human physiological disfunctions."

The heating pads have an appliance cord which connects to an electric outlet, and a control switch which permits the user to select from a number of heat settings. The parties also agree that "[t]he heating pads, while relying on electrical elements to generate heat, also contain thermostats and other comparable mechanisms to insure that heat does not generate to the point that it would burn the user."

In support of its contention that the Customs Service erroneously classified the heating pads, plaintiff relies on two principal arguments. Primarily, plaintiff contends that paragraphs 339 and 353 of the Tariff Act of 1930, which are the predecessor provisions of the tariff items in issue, indicate that the proper classification of the merchandise should be under item 684.50, TSUS. Secondly, plaintiff maintains that the imported merchandise is not *ejusdem generis* with the exemplars or articles specifically mentioned in item 684.20, TSUS. *See, e.g., Nomura (Am.) Corp.* v. *United States,* 62 Cust. Ct. 524, 529–32, C.D. 3820, 299 F. Supp. 535, 540–42 (1969), *aff'd,* 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971).

In support of the classification by Customs, defendant contends that the heating pads are embraced by the designation for "portable electro-thermic kitchen and household appliances," in item 684.20, TSUS, and that they are within the common meaning of the terms "portable electro-thermic household appliances." Hence, the defendant submits that plaintiff has "plainly failed to rebut the Government's presumptively correct determination that the heating pad is correctly classified under item 684.20, TSUS, which expressly provides for portable electro-thermic household appliances."

## DISCUSSION

As with other statutory provisions, it is function of the court to interpret the tariff acts in a manner that will fulfill or carry out the intent of Congress. *See Sandoz Chem. Works, Inc.* v. *United States,* 43 CCPA 152, 156, C.A.D. 623 (1956). The primary source to ascertain that intent "is the specific language of the tariff provision, which is to be given its common or commercial meaning." *Phone-Mate, Inc.* v. *United States,* 12 CIT 575, 690 F. Supp. 1048, 1051 (1988) (citing *Ameliotex, Inc.* v. *United*

*States,* 65 CCPA 22, 25, C.A.D. 1200, 565 F.2d 674, 677 (1977)), *aff'd,* 867 F.2d 1404 (Fed. Cir. 1989). *See also A & A Int'l, Inc.* v. *United States,* 11 CIT 775, 778, 676 F. Supp. 263, 265 (1987).

The court may ascertain and determine the common meaning of tariff terms by referring to dictionaries, scientific authorities, and other reliable sources. *See Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, 16, C.D. 4783, 468 F. Supp. 1318, 1321, *aff'd,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). When the court is confronted with conflicting interpretations of a tariff provision, and there is doubt or ambiguity, it is proper to resort to legislative history and other appropriate extrinsic guides. *See* 2A N. Singer, *Sutherland Statutory Construction* § 48.01 (4th ed. 1984). In all cases, absent a contrary legislative intent, the statutory language is deemed conclusive. *See Burlington N. R.R.* v. *Oklahoma Tax Comm'n,* 481 U.S. 454, 461 (1987). Indeed, when the court finds "the terms of a statute unambiguous, judicial inquiry is complete * * *." *Rubin* v. *United States,* 449 U.S. 424, 430 (1981).

The term "electrothermic" is defined in *Webster's Third New International Dictionary* 733 (1963), as "relating to both electricity and heat: combining electricity and heat * * *: *specif:* relating to the generation of heat by electricity * * *." In addition, in *Border Brokerage Co.* v. *United States,* 65 Cust. Ct. 106, 112, C.D. 4061 (1970), the Customs Court stated that "[t]he word 'thermic' relates to heat and electro-thermic connotes heat which has as its source electricity."

In this case, it cannot be disputed that the heating pad operates by electrically generated heat. Indeed, the stipulation of facts expressly describes the heating pad as "*a portable thermal electric appliance* that utilizes the property of alternating electric current to develop heat when it encounters resistance." (emphasis added).

*Webster's Third New International Dictionary* states that an "appliance" is "a tool, instrument, or device specially designed for a particular use: * * * a household or office utensil, apparatus, instrument, or machine that utilizes a power supply, esp. electric current * * *." *Id.* at 104–05. It also cannot be questioned that "portable" means "capable of being carried: easily or conveniently transported: light or manageable enough to be readily moved * * *." *Id.* at 1768. Indeed, the *IEEE Standard Dictionary of Electrical and Electronic Terms* 30 (2d ed. 1977) defines a "portable appliance" as "[a]n appliance that is actually moved or can easily be moved from one place to another in normal use."

The stipulation of facts states that the "heating pads are used to ease body discomfort caused by muscle strain and to help relieve comparable human physiological disfunctions." A physical examination of the heating pads reveals that they fully comply with the definition, in that they are light and may be "easily and conveniently transported."

The term "household" is defined by *Funk and Wagnalls New Standard Dictionary of the English Language* 1190 (1956) as "[b]elonging to the house and family; domestic; as, *household* goods." (emphasis in original). In the *Electrical Engineers Handbook,* under the heading

"Household Heating and Cooking Appliances," a number of articles are listed, including a "warming pad." *See* H. Pender & W. Del Mar, *Electrical Engineers Handbook* 15–73 (4th ed. 1953). Under "warming pad," it is stated that: "Warming Pads are of two types. One type, termed 'three-speed' is set for 'low,' 'medium,' or 'high' by a switch, which changes the circuit for inputs of 20, 40, or 60 watts respectively. Thermostats limit the top temperature. 'Multiple-heat' pads give positive control at different temperatures." *Id.* at 15–74. The stipulation of facts states that the heating pads contain:

> [a] control that permits the user to turn the heating pad on and off and to select from among a number of heat settings (*e.g.*, high, medium and low). The heating pads, while relying on electrical elements to generate heat, also contain thermostats and other comparable mechanisms to insure that heat does not generate to the point that it would burn the user.

From a reading of the definitions and the stipulation of facts, it is clear that "warming pad" is synonymous with "heating pad."

It is also expressly stipulated that "[a]pproximately ninety-five percent * * * of all heating pads sales are *to individuals* * * * [and that] [t]he greatest use of the heating pad is *in the household* * * *." (emphasis added). In sum, contrary to the assertions of plaintiff, the stipulated facts and the quoted definitions indicate that the imported heating pads are within the common meaning of "portable electro-thermic household appliances."

In a supplement to its reply brief, plaintiff notes that a narrower interpretation of item 684.20, TSUS, is supported by the decision of this court in *West Bend Co., Div. of Dart Indus., Inc.* v. *United States,* 12 CIT 1016, 703 F. Supp. 93 (1988). In *West Bend,* the imported merchandise consisted of electric hot-air popcorn poppers that was classified by the Customs Service "as a portable electro-thermic appliance under Item 684.20 of the [TSUS] * * *." 703 F. Supp. at 94. The plaintiff protested the classification, and contended that the imported popcorn poppers were properly classifiable as electro-mechanical household appliances, under item 683.32, TSUS, or, alternatively, "as other electric articles not specially provided for under Item 688.42, [TSUS] * * *." *Id.*

In *West Bend,* the court found that the imported popcorn poppers contained both "an electro-thermic element which is essential to the popping of the corn and an electro-mechanical element which is also essential to the process." *Id.* at 95. Having concluded that the imported popcorn poppers were "a hybrid object which cannot properly be classified either under an electro-thermic classification or under an electro-mechanical classification," the court held that the popcorn poppers were properly classifiable as portable electro-thermic appliances under item 688.42, TSUS. *Id.* Of particular relevance to the case at bar is the conclusion of the court "that the provision for electro-thermic appliances is not a description by name." *Id.* at 95. Hence, the court concluded that "the basic principle that tariff acts were enacted to include

all forms of *named* articles does not apply here." *Id.* (emphasis in original).

Plaintiff contends that the quoted language from *West Bend* rebuts the arguments in defendant's brief. In its supplement to its reply brief, plaintiff asserts that "[t]he Brief for the * * * Defendant, relies in part on the premise that the provision for 'electro-thermic * * * appliances' found in item 684.20, [TSUS], is a description by name and therefore includes all forms of the named article."

Subsequent to plaintiff's supplement to its reply brief, however, the decision of this court in *West Bend* was reversed. *See West Bend Co., Div. of Dart Indus., Inc.* v. *United States,* 892 F.2d 69 (Fed. Cir. 1989). In reversing, the Court of Appeals for the Federal Circuit determined "that the narrow scope the trial court gave the term 'electrothermic * * * appliances' was legally incorrect." 892 F.2d at 72. The appellate court stated that:

> When TSUS item 684.20 is read in conjunction with other relevant tariff provisions and when consideration is given to other indicators of legislative intent * * *, it is apparent that the term "electrothermic * * * appliances," as used in TSUS item 684.20 and its superior heading, was intended to encompass merchandise having both electrothermic and electromechanical components."

*Id.* Hence, the appellate court opinion in *West Bend* supports a broader interpretation of the designation "portable electro-thermic kitchen and household appliances," in item 684.20, TSUS than the one urged by the plaintiff.

Nevertheless, plaintiff contends that Congress intended to exclude classification of heating pads under item 684.20, TSUS, and notes that, according to the *Tariff Classification Study of 1960,* paragraph 339 of the Tariff Act of 1930 is the predecessor provision to item 684.20, TSUS. Plaintiff also notes that paragraph 353 of the Act is the predecessor provision to item 684.50, TSUS. *See* United States Tariff Commission, *Tariff Classification Study: Proposed Revised Tariff Schedules of the United States* 744–45 (1960).

Specifically, plaintiff asserts that paragraph 339 of the Tariff Act of 1930, the predecessor provision of item 684.20, TSUS, "was concerned only with utensils made of metal and characterized as table, household, kitchen or hospital utensils * * *." Plaintiff submits that, while paragraph 339 may have covered articles having a heating element, the presence of a heating element was not necessary for an article to have been classifiable under that paragraph. Hence, according to plaintiff, "[t]he key condition for classification under paragraph 339 was that the article had to be a utensil."

Plaintiff submits that, in contrast, the predecessor provision of item 684.50, TSUS, paragraph 353 of the Act, "focus[ed] on merchandise having an electrical device or element as an essential part." Hence, plaintiff states: "Since the essential design element of a heating pad is the electrical heating element, and not the particular metallic composi-

tion, we submit that heating pads would have been properly classifiable under paragraph 353 of the Act, and not under paragraph 339, prior to the adoption of the TSUS." On these assumptions and assertions, plaintiff maintains that the congressional intent in enacting the TSUS would be violated if an article that formerly would have been classifiable under paragraph 353 of the Act, the predecessor of item 684.50, TSUS, is now classified under item 684.20 of the tariff schedules.

Plaintiff also contends that a heating pad could not be a "utensil" under paragraph 339 of the Tariff Act of 1930, and, in support of its argument, cites the narrower construction of the term "utensil" found in the dissenting opinion of Judge Martin, of the Court of Customs and Patent Appeals, in *J.C. DeJong & Co.* v. *United States,* 50 Cust. Ct. 90, C.D. 2395 (1963), *rev'd,* 52 CCPA 26, C.A.D. 852 (1965).

The question presented in *DeJong* was whether certain pole ends used on the ends of curtain rods had been properly classified by the Customs Service "as articles in chief value of brass, not specially provided for, in paragraph 397 of the Tariff Act of 1930. * * *." 50 Cust. Ct. at 90. The plaintiff contended that the imported merchandise was properly classifiable "as household utensils, not specially provided for, in chief value of brass in paragraph 339 * * *." *Id.* The defendant maintained that the imported merchandise was not a household utensil within the common meaning of that term.

The Customs Court held that the pole ends were not utensils or implements within the definition of those words, and stated that "it would seem to follow * * * that the pole ends would constitute parts [of the curtain rod]." *Id.* at 93. The court reasoned that "where pole ends are used with curtain poles for suspending therefrom curtains affixed to pole rings, said pole ends are integral, constituent, and component parts of the curtain pole with which they are joined, and said pole could not serve its function without the use of the pole ends." *Id.*

On appeal, the Court of Customs and Patent Appeals reversed, and held that since "the pole ends are chiefly used in the household" and "serve primarily a utilitarian purpose," they should be classified as household utensils. 52 CCPA at 29. The appellate court reasoned that a utensil is " 'something that is used; a thing serving a useful purpose.' " *Id.* at 28. Hence, the court concluded that "[s]ince we find that the pole ends themselves are household utensils, it is unnecessary to review the Customs Court's consideration of them as parts of poles." *Id.* at 29.

In his dissenting opinion in DeJong, Judge Martin disagreed with the appellate court's broad definition of "utensil," and commented that:

> I think the common meaning of the term "utensil" connotes a tool function as well as a utility function in an article. The tool aspect to my mind is essential, while the decisions cited by the majority emphasize the utilitarian aspect in broadly applying the definitions to the articles with which they were concerned. An over-emphasis of the utilitarian aspect can lead to an unrealistic result, as this case

> shows. A chair is useful but it is hardly a tool or utensil; the same is
> true of a curtain pole end.

*Id.* at 30 (Martin, J., dissenting). Relying on the quoted language, plaintiff contends that "the term 'utensil' expresses a range of functions, none of which accords with those of a heating pad."

Although Judge Martin's dissenting opinion in *DeJong* did not consider the curtain pole ends to have had a "tool aspect," that dissenting view does not state the holding of the case, nor does it represent the law. Hence, subsequent to *DeJong,* the term "utensil" has been given a broad definition. *See e.g., New York Merchandise Co.* v. *United States,* 62 Cust. Ct. 674, 677, C.D. 3847 (1969) (a "utensil" is " 'something that is used; a thing serving a useful purpose' ") (quoting *DeJong,* 52 CCPA at 28); *see also The Akron* v. *United States,* 60 Cust. Ct. 60, 63, C.D. 3259 (1968).

Plaintiff also relies on the appellate court opinion in *Pramette Juvenile Furniture Co.* v. *United States,* 20 Cust. Ct. 192, C.D. 1109 (1948), *aff'd,* 36 CCPA 61, C.A.D. 398 (1949), and cites the case for the proposition that heating pads cannot be considered household utensils because they are not "used in the household for the care and maintenance of the home."

The question presented in *Pramette* was whether certain children's strollers or go-carts had been properly classified by the Customs Service "as articles of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930 * * *." 20 Cust. Ct. at 192. The plaintiff, in seeking classification of the strollers as household utensils under paragraph 339, reasoned that:

> The word "house" [indicates] a structure for shelter and the word
> "household" * * * carries with it the broader connotation of pertaining to the members of a family, and since the articles here in issue are used for the convenience and comfort of the members of a
> family, they are household utensils and within the purview of paragraph 339 * * *.

*Id.* at 193.

The Customs Court held that the strollers or go-carts did "not come within the scope of the term 'household utensils' as commonly defined and as judicially interpreted." *Id.* at 196. The Court stated that:

> [w]hile recognizing the distinction drawn by plaintiff's counsel between the words "house" and "household," nevertheless the word
> "household," as used in paragraph [ ] 339 * * *, appears as an adjective to modify the noun[ ] "utensils" * * *. Reference to lexicographic authorities * * * has indicated a clear distinction in meaning between these latter two words. Moreover, our attention
> has not been drawn to any case wherein articles similar to those
> here in issue have been held to be *household utensils* within the
> purview of paragraph 339 * * *.

*Id.* (emphasis in original).

In affirming the decision of the Customs Court, the Court of Customs and Patent Appeals stated that "[t]he words 'household utensils' as used in paragraph 339 * * * have been consistently construed by this

court to refer to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home for the convenience and comfort of its members." 36 CCPA at 64. Hence, the appellate court held that the imported strollers and go-carts were not household utensils because "[t]he stipulation in this case clearly states that the strollers or go-carts 'are designed for and used principally * * * for the transportation of children * * * and are *chiefly so used on streets and beaches.*' " *Id* at 63 (emphasis in original).

Relying on the *Pramette* case, plaintiff argues that heating pads are not "household utensils" because they are not "used in the household for the care and maintenance of the home." In *Pramette,* however, the Court of Customs and Patent Appeals did not limit "household utensils" to those used *only* "for the care and maintenance of the home." Instead, the court in *Pramette* stated that "[t]he words 'household utensils' * * * have been consistently construed by this court to refer to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home *for the convenience and comfort of its members.*" 36 CCPA at 64 (emphasis added). It is also relevant to note that the *Pramette* case turned on the fact that the strollers and go-carts were not used chiefly in the home, but on streets and beaches.

In this case, in the language of the stipulation, "[t]he greatest use of heating pads is in the household * * *." Moreover, it cannot be doubted that when the heating pads are "used to ease body discomfort caused by muscle strain and to help relieve comparable human physiological disfunctions[,]" they "serve a utilitarian purpose," and are being used "for the convenience and comfort of [the household's] members." *See Pramette,* 36 CCPA at 64.

Moreover, notwithstanding plaintiff's contention that item 684.20, TSUS, is merely a reenactment of paragraph 339 of the Act, the language and structure of paragraph 339 is not controlling in the interpretation and application of item 684.20 of the tariff schedules. It is well established that judicial interpretation under a prior tariff act is not controlling when the tariff schedules differ in structure and wording from the Tariff Act. *See Brentwood Originals* v. *United States,* 73 Cust. Ct. 185, 186, C.D. 4572 (1974). The wording of paragraph 339 is as follows:

> Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * whether or not containing electrical heating elements as constituent parts thereof.

This language is quite different from "toasters, waffle irons, skillets, ovens, stoves, coffee makers and other portable electro-thermic kitchen and household appliances" as provided for in item 684.20, TSUS. Hence, classification under item 684.20 of the tariff schedules is not controlled by paragraph 339 of the Tariff Act of 1930.

Plaintiff also contends that the classification of the heating pads under item 684.20, TSUS, does violence to the principle or canon of *ejus-*

*dem generis.* According to plaintiff, "heating pads are not *ejusdem generis* with the exemplars specified in item 684.20, TSUS." Plaintiff submits that all the articles or exemplars listed in item 684.20, TSUS, "are used in the preparation of food or beverages intended for human consumption," and that, in contrast, the heating pads are "therapeutical devices" and "play no part in the kitchen." Hence, plaintiff concludes that, "it would be an improper and unnecessary stretch of the rules of statutory construction to hold that the phrase 'other portable electrothermic household and kitchen appliances' as used in item 684.20, TSUS, includes therapeutic devices such as heating pads."

The defendant responds that *ejusdem generis* is not to be invoked in this case because "the legislature has plainly and unambiguously provided for portable electro-thermic household appliances in TSUS item 684.20, and since a heating pad is a portable electro-thermic household appliance within the common meaning of those terms, the application of a rule of construction to determine whether the provision encompasses the article it describes, is unwarranted."

*Ejusdem generis,* which means of the same class or kind, teaches that "where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described." *United States* v. *Damrak Trading Co.,* 43 CCPA 77, 79, C.A.D. 611 (1956). *Ejusdem generis* is "a specific application or illustration of the broader maxim *noscitur a sociis,* i.e., known by its associates." *Economy Cover Corp.* v. *United States,* 76 Cust. Ct. 130, 132, C.D. 4645, 411 F. Supp. 783, 784 (1976). It is well established, however, that *ejusdem generis* is not to be invoked to restrict or limit the clear language of a tariff provision. *See Sandoz Chem. Works, Inc.* v. *United States,* 50 CCPA 31, 35, C.A.D. 815 (1963). As with all principles or canons of statutory interpretation, *ejusdem generis* is "used only as an instrumentality for determining the legislative intent in cases where it is in doubt." *John V. Carr & Son, Inc.* v. *United States,* 77 Cust. Ct. 103, 108, C.D. 4679 (1976).

Plaintiff relies on the case of *Daw Indus., Inc.* v. *United States,* 5 CIT 12, 561 F. Supp. 433 (1983), *rev'd,* 714 F.2d 1140 (Fed. Cir. 1983), for the application of *ejusdem generis* to item 684.20, TSUS.

In *Daw,* the question presented was whether certain prosthetic sheaths and socks designed to be used by amputees wearing artificial limbs had been properly classified by the Customs Service as "wearing apparel," under item 382.78, TSUS, for the sheaths, and under item 382.58, TSUS, for the socks. The plaintiff contested the classification, and claimed that the sheaths and socks should have been classified under item 709.57, TSUS, which provides for "[o]rthopedic appliances, surgical belts, trusses, and similar articles; artificial limbs, eyes, teeth, and other prosthetic articles; splints and other fracture appliances." *See* 5 CIT at 13, 561 F. Supp. at 434.

More specifically, the plaintiff in *Daw* claimed that the merchandise was "other prosthetic articles" in the sense that they were themselves

prostheses or, in the alternative, that they were prosthetic articles. *See* 5 CIT at 20, 561 F. Supp. at 439. The defendant, on the other hand, claimed that "the socks and sheaths are not prostheses and the provision for prosthetic articles encompasses only those [articles] which are prostheses." *Id.* Applying the principle of *ejusdem generis,* this court held that the sheaths and socks were "not of the same class or kind as the enumerated articles [in item 709.57] which are replacements for missing or defective parts [of the body] * * *." *Id.* at 22, 561 F. Supp. at 440. Hence, the court held that the sheaths and socks were more in the nature of wearing apparel, and sustained the classification. *Id.*

In reversing the decision, the Court of Appeals for the Federal Circuit held that " 'other prosthetic articles' has a broader meaning than the CIT gave it." 714 F.2d at 1142. The appellate court stated that its "lodestar is congressional intent and, in the absence of a specific definition we begin with common meaning." Id. In determining that the sheaths and socks were within the common meaning of the term "other prosthetic articles" in item 709.57, TSUS, the appellate court did not apply *ejusdem generis.* Hence, under the principles enunciated by the appellate court in *Daw,* merchandise which falls within the common meaning of a term or terms used in a tariff schedule is properly classified under that provision, absent a specific contrary congressional intent.

In this case, plaintiff has failed to demonstrate a legislative intent contrary to the common meaning of "portable electro-thermic kitchen and household appliances." Furthermore, there is no ambiguity as to the meaning of the words "portable electro-thermic kitchen and household appliances," as they are used in item 684.20, TSUS. Since the heating pads are encompassed by the common meaning of the tariff provision, plaintiff may not resort to *ejusdem generis* to restrict the scope of tariff item 684.20.

Finally, plaintiff alternatively claims that the heating pads "must be classifiable under the broader provisions of item 688.4[5], TSUS as other electrical articles not specifically provided for." The only reason given for this contention is that " [i]t follows that if the more specific provision of item 684.[50], TSUS does not apply, then the basket provision encompassing the heating pads is the only other choice for classifying heating pads."

The Court of Customs and Patent Appeals, however, has noted that "[o]ne of the purposes of the TSUS, insofar as schedule 6 is concerned, was to reduce the importance of the basket provisions of the Tariff Act of 1930." *Hawaiian Motor Co.* v. *United States,* 67 CCPA 42, 46, C.A.D. 1241, 617 F.2d 286, 289 (1980). In addition, "to the extent practicable, the Tariff Commission's goal [was] to particularize, whenever possible, the various lines of imported merchandise." *C.J. Tower & Sons, Inc.* v. *United States,* 63 Cust. Ct. 128, 139, C.D. 3886 (1969). Consequently, plaintiff's alternative claim, that the heating pads should be classified under the basket provision, would, if accepted by the court, frustrate the desired goal.

## Conclusion

Based upon an examination of the imported heating pads, the stipulated facts and the applicable statutory and judicial authority, it is the holding of the court that the plaintiff has not rebutted the presumption of correctness that attaches to the classification by Customs.

Since the imported merchandise was properly classified under item 684.20, TSUS, plaintiff's protest is denied and the action is dismissed. Judgment will issue accordingly.